City of Paducah v. Jones, &c.

---

CASE 94.—ACTION BY CITY OF PADUCAH AGAINST J. L. JONES AND HIS SURETIES FOR A VIOLATION OF HIS BOND TO THE CITY AS A SALOON-KEEPER.— October 25.

# City of Paducah v. Jones, &c

126    809
s131    686
f134     80

Appeal from McCracken County.

W. M. REED, Circuit Judge.

Judgment for defendants, plaintiff appeals. Reversed.

1. Principal and Surety—Action on Bond—Defense by Surety—Conclusiveness of Judgment Against Principal.—Sureties on a liquor dealer's bond are not estopped, in an action thereon, from showing that their principal had not violated the law, even though in penal proceedings against him he confessed his guilt, or was convicted of the offense.

2. Intoxicating Liquors—Bonds of Dealers — Actions on — Sufficiency of Evidence.—In a suit by the city on a bond conditioned that the principal will conduct his liquor business in a legal manner, evidence examined, and held to warrant the finding that the clerk who made the illicit sales was acting entirely for himself and that his acts were never ratified by the principal.

3. Same—Admissibility of Evidence.—In an action by the city on a bond conditioned that the principal will conduct his liquor business in a legal manner, evidence showing that the

principal's clerk, who illicitly sold on Sunday, had sold liquor with the knowledge of the principal on previous Sundays, is admissible, since it tends to show whether or not the selling on the Sunday in question was within the scope of the clerk's employment or by the consent of the principal.

4. Same—Offenses—Wrongful Acts of Agent—Employer's Liability.—An employer, irrespective of his instructions or directions, may be proceeded against criminally for the act of his clerk or agent, who, within the scope of his employment, sells or furnishes liquor in violation of law.

5. Same—Ordinances—Power to Enact—Requirement of Bond.—Under Ky. Stats., 1903, section 3058, giving city councils the right to license, tax, and regulate the sale of liquor, the Paducah council had the power to pass an ordinance requiring an applicant for a liquor license to execute a $1,000 bond, with good sureties thereon, conditioned that the applicant will conduct his liquor business in a legal manner, since the requirement is reasonable and proper, and has a tendency to compel an observance of the law.

6. Same—Actions on Bond—Defenses.—In an action by the city on a bond conditioned that the principal will conduct his liquor business in a legal manner, the amount of damages created by the violation of law does not enter into the case, since, if the conditions of the bond have been broken, the sureties are liable for the sum stipulated therein.

7. Same.—In such an action, payment of the fine imposed upon the principal in criminal proceedings for the violation of law will not satisfy the bond.

JAMES CAMPBELL, JR., attorney for appellant:

When regulations are imposed, as in this case, the licensee is criminally liable for their non-observance. The defendant was found by the county commissioners "qualified," and a license was issued to him upon the personal trust that he would conduct the business according to the regulations. The sale here made to a minor was a violation of that trust, and a violation of law. It is no defense that the defendant had no intention to violate the law. "Good intentions" are said by the proverb to be a pavement for another place, but they are not a sound one for a barroom. The law has been violated. It looks to the man it entrusted with the management of this business and holds him liable. It is immaterial whether his liability is based upon his negligence in permitting the sale, or upon both, for the defendant is liable for a

City of Paducah v. Jones, &c.

negligent sale from insufficient supervision of an agent as much as if he ordered the sale. If the clerk, as Judge Cooley says, supra, being in possession of the keys, opens the saloon on Sunday for traffic, the licensee could not excuse himself from liability by his absence or ignorance; nor can he do so in the present case of a sale to the minor by being temporarily absent from the room. The defendant chose to seek for and assume the liabilities of the calling of a saloon-keeper, that he might enjoy its profits. He can not be allowed to enjoy its profits and assign his duties and liabilities to another.

## LIST OF AUTHORITIES.

1. Is this action a penal one? (Ballowe v. Comth., 44 S. W., 646; Comth. v. Stringer, 78 Ky., 56; Cullinan v. Burkhard, 86 N. Y., 1003; Current law, vol. 4, p. 262.)

2. Consent to conditions by accepting license.—

(a) Right to regulate saloons delegated to the city. (Subsec. 10, section 3058, Ky. Stats. (1903); McNulty v. Toof, 75 S. W., 258; subsec. 23, section 3058, Ky. Stats. (1903); subsec. 25, section 3058, Ky. Stats. (1903); Cooley's Constitutional Limitations, 743; Dunn v. Comth., 49 S. W., 813.)

(b) Right of the city to adopt and enforce such police regulations as may be expedient and necessary . (Abbott on Municipal Corporations, vol. 1, sections 130-31-32-33; Lodano v. State, 25 Ala., 64; Quintard v. Corcoran, 50 Conn., 34; Hawes v. Maxwell, 32 N. E., 152; People v. Eckman, 63 Hun. 209, 18 N. Y. 654; City of Providence v. Bligh, 10 R. I., 208; O'Flynn v. State, 66 Miss. 7, 5 South. 390; Hogan v. Chief Justice, etc., 27 Tex., 226; State v. Pierce, 26 Kan., 777; Green County v. Wilhite, 29 Mo. App., 459; State v. Walker, 56 N. H., 176; Brown v. Comth., 114 Pa., 235; Grainger v. Hayden, 17 R. I., 179; Jones v. Bates, 4 L. R. S., 495; Blockway v. David Petted, 7 L. R. A., 740; Indiana v. Gerhardt, 33 L. R. A., 313; State v. Beach, 43 N. E., 949; Decker v. Sargeant, 125 Ind., 404; Davis v. Fasig, 128 Ind., 271; Black. Intox. Liquors, section 50; McKinney v. Salem, 77 Ind., 213; State, McKey, v. Bonnell, 119 Ind., 494; Moore v. Indianapolis, 120 Ind., 483; Black, Intox. Liquors, section 51; Nelson v. State, 46 N. E., 941; Shay v. Muncie, 46 N. E., 138.)

3. The liability of Jones for the acts of his agent. Dumain. (Locke v. Comth., 69 S. W., 763; Ky. Stats., sections 2570, 2571; Ellison, etc., v. Comth., 69 S. W., 765; Comth. of Mass. v. Steven, 11 L. R. A., 357; North Carolina v. Kittelle, 15 L. R. A., 694; State v. McBrayer, 98 N. C., 619; State v. Scroggins, 107 N. C., 492; Farrell v. State, 32 Ohio St. 456, 30 A. M. Rep. 614; 1 Whar-

ton, Crim. Law, 247, 341, 2422; 2 Wharton, Crim. Law, 1153; Carroll v. State, 73 Md., 551; State v. Denson, 31 W. Va., 122; 11 Am. & Eng. Ency. of Law, 718; Mullerr v. Buncombe County Comrs., 89 N. C., 171; State v. Wallace, 94 N. C., 927; State v. McNeeley, 60 N. C., 234; McCutcheon v. People, 69 Ill., 606; Noecker v. People, 91 Ill., 491; Mogler v. State, 47 Ark., 110; Edgar v. State, 45 Ark., 356; Waller v. State, 38 Ark., 656; Loeb V. State, 75 Ga., 258; Snider v. State, 81 Ga., 753; Whiton v. State, 37 Miss., 379; Riley v. State, 43 Miss., 397; Dudley v. Sautoine, 49 Iowa, 650; People v. Roby, 52 Mich. 577, 50 Am. Rep. 270; People v. Blake, 57 Mich., 566; State v. Dickens, 2 N. C., 407; State v. Boyett, 32 N. C., 366; State v. Hart, 51 N. C., 389; State v. Presnell, 34 N. C., 103; Scalfi v. State, 73 S. W., 441; Current Law, vol. 4, p. 262; Cornett v. Comth. (Ky.), 78 S. W., 853; Knott v. Peterson, 101 N. W., 173; Cullinan v. Kuch, 177 N. Y. 303, 69 N. E. 597; People v. Bassing, 100 N. W., 396; People v. Lundell, 99 N. W., 12; People v. Krisel, 98 N. W., 850; Beane v. State, 80 S. W., 573; State v. Terry, 79 S. W., 998; Sinclair v. State, 77 S. W., 621; Pigford v. State, 74 S. W., 323; Comth. v. Nichols, 10 Met. 259, 43 Am. Dec. 432; Hanson v. State, 43 Ind., 550; State v. Pasnell, 2 Hump., 398; State v Mueller, 38 Minn., 497; Comth. v. Major, 6 Dana, 293; Comth. v. Park, 1 Gray, 553; Parker v. State, 4 Ohio St., 563.)

Crice & Ross, attorneys for appellees.

Cities can not enforce their civil contract by fines and penalties. Neither can cities enforce the State law by civil contracts. This bond is a civil contract, as claimed by appellant, for the purpose of compelling parties who are licensed by the city of Paducah to sell liquors by retail to observe the criminal law of the State of Kentucky. It has no power to do this. The Legislature in making it unlawful to sell liquor on Sunday prescribe a penalty for its violation. The Legislature has also, by subsection 25 of section 3058, giving the general council power to impose, enforce and collect fines and forfeitures, and to punish the violation of the laws of the city of the second class by fines and imprisonment or both. But the general council of Paducah has not adopted any ordinance making it unlawful to sell liquor in the city of Paducah on Sunday, and it has not by any ordinance fixed any penalty for the violation of the State law by selling liquor in Paducah on Sunday. The only way the city is given power to enforce the observance of the criminal law is by punishing the violator by fines and imprisonment or both, to be fixed by an ordinance, and not the semblance of authority is

City of Paducah v. Jones, &c.

given to the city to enforce the observance of the criminal laws of the State by civil contracts such as the bond in this case.

## CITATION OF AUTHORITIES.

Equitable L. Assurance Society v. Comth., 28 Ky. Law Rep., 333; Prater v. Comth., 4 Ky. Law Rep., 334; Locke v. Comth., 113 Ky., 864; Ellison et al. v. Comth., 69 S. W., 765; Ky. Stats., section 3058, subsec. 2-10 and 23; City of Covington v. Wood et al., 98 Ky., 345; Yick Wo v. Hopkins, etc., 118 U. S., 356.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Paducah is a city of the second class, and under section 3058 of the Kentucky Statutes of 1903, the general council have the right "to license, tax and regulate the sale of spirituous, vinous and malt liquors in saloons and coffee houses." In pursuance of this authority, the council enacted an ordinance providing that: "Every person, firm, company or corporation desiring to keep a coffee house, saloon, clubroom, or other establishment wherein spirituous, vinous or malt liquors are sold by retail, shall make application therefor in writing to the general council giving the number of the house, and street on which same is located in which said business is to be carried on, with the receipt of the city treasurer for the amount required for such license as herein fixed, and also the proper receipt of the proper officer for county and State or other license than city license where such license is required; and the names of two good sureties resident of McCracken county, Kentucky, and the owner of real estate therein, as bondsman. If said general council shall approve and accept such sureties and grant said license, the clerk of said city of Paducah shall thereupon issue to the

said applicant upon his entering into a bond with said
sureties to said city according to law in the penalty
of one thousand dollars, conditioned that he, she,
they or it will keep a quiet, orderly house, and will
not permit gaming or riotous or disorderly conduct
therein, and shall not keep open his bar nor offer for
sale any spirituous, vinous or malt liquors on Sun-
day; and otherwise comply with all the ordinances
of the city of Paducah in relation to coffee houses,
saloons and clubrooms. But the clerk shall not issue
said license until the said bond is executed as afore-
said, and said person, firm, company or corporation
shall not commence business until said license shall
issue." Appellee, J. L. Jones, upon his application
to keep a coffee house and sell therein spirituous,
vinous, and malt liquors, was granted license so to
do, and thereupon in compliance with the ordinance
executed the following bond, which was accepted by
the city: "Know all men by these presents that we,
J. L. Jones, as principal, and Adolph Weil and Lee
Weil, sureties, are held firmly bound unto the said
city of Paducah in the sum of one thousand dollars
the payment thereof well and truly to be made, we
bind ourselves, our heirs, executors, administrators
or assigns, jointly and severally, by these presents,
sealed with our seals, and dated this, the 2d day of
January, 1905. Now, the condition of this bond is
such, whereas the above named J. L. Jones hath
obtained from the general council aforesaid a license
to keep a coffee house to sell spirituous, vinous, and
malt liquors therein in the city of Paducah for one
year. Now, if the said J. L. Jones shall well and truly
observe the laws of the Commonwealth, and the laws
and ordinances of the city of Paducah relating to
coffee houses, then this bond is to be void; otherwise

to remain in full force and effect.'' Ky. Stats. 1903, section 1303, as well as an ordinance of the city of Paducah, prohibit the sale of spirituous, vinous, or malt liquors on Sunday. A warrant was issued against Jones, charging him with the offense of selling liquor on Sunday, and upon his confession of guilt he was fined, thereupon the city instituted this action upon his bond, seeking to recover thereon the sum of $1,000.

Two interesting questions are presented for our consideration: ''First. Was Jones guilty of selling liquor on Sunday? Second. Did the general council have the right as a condition precedent to the issual of licenses to exact the bond in question, and, if so, the facts authorizing it, can there be a recovery for the full amount? The sureties upon the bond of Jones were not estopped by his confession of guilt or conviction of the offense from showing in an action against them that no breach of the bond had been committed. They were not parties to the penal proceeding against him, and, as their liability upon the bond depended upon the question whether or not he had committed a breach of his obligation, they had the right in an action against them to show that he had not. Margoley v. Commonwealth, 3 Metc. 405; Commonwealth v. Stringer, 78 Ky. 56.

The evidence in this action disclosed the following facts: The coffee house conducted by Jones was in the rear of a grocery store also operated by him; the coffee house being separated from the grocery by swinging doors. He employed a clerk to attend to both the coffee house and the grocery, and on the Sunday in question Jones went out in the country, but before leaving gave his key to the clerk, telling him ''to open up,'' not indicating whether he desired him to open the grocery or the saloon, or both. Soon

after his departure, the clerk did "open up," and during the day before the return of Jones sold liquor to numbers of persons. When Jones returned late in the afternoon, he found in the coffee house or saloon a number of persons, and, after ordering them out, closed the doors. The clerk had been in the employment of Jones for some time, and testified that his duties on Sunday were the same as those during the week, with the exception of the saloon. During his examination, he was asked by counsel for the city if the saloon had not been kept open on other Sundays. Objection was made, and sustained, and it was avowed that the witness, if permitted to answer, would say that on several Sundays the clerk with the knowledge of Jones kept open the saloon, and sold liquor to persons desiring to purchase. The trial judge was of the opinion that Jones was not responsible or liable for the act of his clerk in keeping open the saloon on the Sunday for which it was sought to recover on the bond, as Jones did not authorize the opening of the saloon or the sale of whisky therein, nor did he know or assent thereto or ratify or approve the same; and upon this issue, which was decisive of the case, rendered a judgment in favor of appellee. With the excluded evidence out of the record, it did not appear that the clerk in opening the saloon and selling liquor was acting within the scope of his employment or by the knowledge or with the consent of Jones, but, on the contrary, the inference was that he was acting entirely for himself, and the trial judge was correct in his conclusion; but we are of the opinion that he erred in failing to permit the city to prove that on previous Sundays, with the knowledge and consent of Jones, his clerk had opened the saloon and sold whisky

therein.   This evidence was competent upon the ground that it conduced to show whether or not the selling by the clerk on the Sunday in question was within the scope of his employment or by the consent of Jones.   If the clerk of Jones in selling liquor on Sunday or in violation of law was acting within the scope of his employment, or by the consent of Jones, then Jones was liable to prosecution for his acts. Jones merely told his clerk to "open up."   He did not give him any other directions, or limit him to selling groceries, or forbid him to sell liquor.   What he intended to convey to his clerk by the direction to "open up," depends largely on what his clerk had done on previous Sundays.   If theretofore on Sunday he had opened up both the saloon and the grocery, it would seem to follow that the directions gave him authority to do the same on this Sunday, although the conduct of Jones in closing the saloon on his return would indicate that he had not intended that his clerk should open it.   If it should appear that the clerk had been in the habit of opening the grocery but not the saloon on Sunday, then the direction to open up would not give him authority to open the saloon, and in opening it he would not be acting within the scope of his employment and Jones would not be liable.   However this may be, in view of the indefiniteness of Jones' direction, it was competent for the purpose of explaining the sense in which it was used by Jones and understood by the clerk to show what had been the practice and custom on previous Sundays, and that the clerk in opening up was obeying what he conceived to be the order of Jones in the light of what happened at other times, and the jury, in determining whether or not the clerk was selling with the knowledge or consent of Jones

or in the scope of his employment, had the right to consider this evidence. If the direction to "open up" meant that the clerk should open the saloon as well as the grocery, then Jones was liable for the clerk's violation of the law, as in selling he was acting within the scope of his employment, and with the consent of Jones, and, in either event, Jones was liable for his acts. The decisions are conflicting upon the question whether or not the master or principal is liable to a criminal prosecution for violations of statutory laws committed by the agent or servant acting within the scope of his employment.

In Massachusetts the rule seems to be that generally the master is not responsible unless in some way he participates in, countenances, or approves the criminal act of his servant (Commonwealth v. Stevens; 153 Mass. 421, 26 N. E. 992, 11 L. R. A. 357, 25 Am. St. Rep. 647), although in that jurisdiction there are exceptions to the rule; the court saying in Commonwealth v. Nichols, 10 Metc. (Mass.) 259, 43 Am. Dec. 433: "It seems to us that in the case of the sale of liquors prohibited by law at the shop or establishment of the principal by the agent or servant usually employed in conducting his business is one of that class of cases in which the master may properly be charged criminally for the acts of the servant." And it is ruled in both the foregoing cases that, if the sale is made by the servant, in opposition to the will of the master, and is in no way approved by him, he is not liable. In North Carolina, the court in an exhaustive opinion in State of North Carolina v. Kittelle, 110 N. C. 560, 15 S. E. 103, 15 L. R. A. 694, 28 Am. St. Rep. 698, after reviewing fully all of the authorities, came to the conclusion that the principal is criminally liable for the conduct

of his clerk acting within the scope of his employment in selling liquor in violation of law. And this rule prevails in Maryland (Carroll v. State, 63 Md. 551, 3 Atl. 29); Georgia (Snider v. State, 81 Ga. 753, 7 S. E. 631, 12 Am. St. Rep. 350); Arkansas (Mogler v. State, 47 Ark. 110, 14 S. W. 473); Mississippi (Riley v. State, 43 Miss. 397); Iowa (Dudley v. Sautbine, 49 Iowa, 650, 31 Am. Rep. 165); Michigan (People v. Roby, 52 Mich. 577, 18 N. W. 365, 50 Am. Rep. 270). In the Iowa Case, the court very aptly said: "The argument briefly stated is that the agent is employed for a lawful purpose and no other. If he does an unlawful act and especially forbidden by his principal, he acts outside of his agency. And so it is argued that the statute which imposes a penalty for selling in prohibited cases by the agent has no application to this case. The clerk was employed to sell wine and beer, and, while it is true that in one sense he was not employed to sell to persons in the habit of becoming intoxicated, he was employed to determine who among those applying to purchase were in such habit and to sell to persons who were not. We think, then, that the agent's fault did not consist in doing what was beyond the scope of his agency, but in doing improperly what was within it. Most certainly a principal cannot escape civil liability for his agent's negligence by instructing him not to be guilty of negligence." The Iowa statute under which this prosecution was had provided that it should be unlawful for any person "by agent or otherwise" to sell intoxicating liquors to persons in the habit of becoming intoxicated; but the court did not rest its decision on the wording of this statute, but upon the general principle that in cases of this character the master is liable for the acts of his

servant within the scope of his employment. In the Michigan case the keeper of a hotel was prosecuted for the act of his clerk in selling liquor on Sunday. The point was made that, as there was no evidence to show that the proprietor consented to the sale or to the opening of the bar, he was not liable for the acts of his clerk. But Judge Cooley, writing for the court, said: "I agree that as a rule there can be no crime without a criminal intent; but this is not by any means a universal rule. Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible." And this court in Locke v. Commonwealth, 113 Ky. 864, 23 Ky. Law Rep. 654, 69 S. W. 763, 38 L. R. A. 237, 101 Am. St. Rep. 374, and Ellison v. Commonwealth, 69 S. W. 765, 24 Ky. Law Rep. 657, approved an instruction which told the jury that, if the sale was made by an authorized agent or clerk in the regular course of business, the defendant was guilty.

If a criminal intent was necessary to constitute the offense of selling liquor on Sunday or to a minor or without license or in violation of law, it would follow that the employer who had directed his clerk not to sell, or if the sale was made without his knowledge, or consent, could not be criminally liable, as the intent necessary to complete the offense would be lacking; but there are a number of statutory offenses in which the law does not inquire into the intention of the person who violates them. His intention is not taken into consideration. It is totally immaterial whether it was good or bad. It is the act constituting the offense that the law looks at and punishes, and

not the intention of the perpetrator. This rule is applicable to statutory offenses in the nature of police regulations, such as the carrying of concealed deadly weapons, the illegal sale of liquor, gambling, certain species or trespass, injuring property, disturbing lawful assemblies, furnishing cigarettes, and numerous others in the same category. And the character of the business carried on by retail dealers in spirituous liquors, the temptation offered by it to violate the law growing out of the nature of the traffic, renders it peculiarly appropriate that the principle announced should embrace those engaged in it, even more certainly than it does other occupations or transactions where no criminal intent is necessary to constitute a violation of the law. Therefore we do not hesitate to say that the employer may be proceeded against criminally for the act of his clerk or agent, who, in violation of law, sells or furnishes liquor acting within the scope of his employment, and this without reference to the instruction or direction given to him by the employer. When a person obtains a license from the State to sell liquor, and for his own convenience and advantage employs other persons to conduct the business for him, he will be charged with responsibility for their acts, and cannot shield himself from prosecution upon the ground that what they did was contrary to his wishes, or in disobedience of his command. He assumes the risk of their acts in the business for which he has employed them; and, if he desires to save himself harmless, must see to it that his servants while acting for him do not violate the law. In answer to this, the argument is made that, if the servant or clerk violates the law in opposition to his employer's directions, he is acting outside the scope of his employment,

and hence the employer is not responsible.   In a
limited sense, and with respect to many crimes, this
is true, but in violations of the liquor law, as in sales
to inebriates or minors or on prohibited days, it is
not.   The employer has placed it within the power
of his clerk to observe or disobey the law.   He has
left it to his discretion and judgment, and is answer-
able for his conduct.   The person who obtains the
license authorizing the sale of intoxicating liquor
cannot by employing others to dispense it evade the
responsibility attaching to the personal privilege
granted to him.   If this could be done, it would be
an easy matter for vendors of liquors by retail to
escape all of the obligations to observe the law
assumed when the license was obtained, under the
pretense that the violations were committed without
their knowledge or consent, although by persons they
have intrusted with the management of the business.
When the proper authorities grant to an applicant
the privilege of retailing liquor, the person obtaining
the license takes it charged with the duty that he
will not violate the law, and this obligation he cannot
escape by surrendering to perhaps irresponsible
clerks or bar-tenders the conduct of his business; and,
while receiving the benefits of their illegal sales,
protect himself from prosecution upon the ground
that he did not authorize or approve their acts.   The
duty of observing the law imposed by the acceptance
of the license attaches to all persons who by employ-
ment of the licensee conduct the business under it.
Their offense is his offense.   Except for his license
they could not violate the law, and he will be held
responsible for what they do.   The law looks to the
person intrusted with the authority, and not the sub-
ordinate he has seen proper to employ.

It is argued that the council had no authority to require an applicant for saloon or coffee house license to execute a bond, and therefore the bond is not an enforceable obligation against the sureties. In this contention we cannot concur. The statute has invested these municipalities with the exclusive right to regulate and control the granting of liquor licenses; the only limitation upon their discretion being that the conditions imposed shall not be arbitrary or unreasonable. Within these limitations, they have the right to provide as a precedent to the granting of the license that the applicant shall perform all the conditions imposed. It is with him to decide whether he will accept it or not. The license is not a right that the applicant may demand and have for the asking. It is a mere privilege that the authorities may or may not give in their discretion. It cannot be successfully maintained that the requirement of the execution of a bond that the licensee will observe the law is an unreasonable condition. On the contrary, it is not only a reasonable, but a proper condition, the imposition of which exercises a restraining influence and has a tendency to compel an observance of the law. The licensee who intends to obey the law cannot object to giving surety for his good behavior, while the applicant who contemplates its violation will find his way beset with more than ordinary trouble. In fact, he takes the license subject to all the laws in force regulating or prohibiting the sale of liquor, and they become a part of the license. The bond executed by the licensee is nothing more than security that he will obey the law. The sureties in the bond bind themselves that he will do this. It is on their part a contract obligation; and, if the bond is broken, as between them and the licensing authori-

ties, they are liable for the sum stipulated in it. The question of the amount of damages caused by the violation of the law by the principal does not, and cannot, enter into the question. It is not contemplated that the recovery should be for any less sum than that fixed. It would·be totally impracticable if not impossible in an action by the city on the bond to arrive at any measure of damage, except the amount stipulated. In an action upon a bond properly executed, the only legitimate subject of inquiry is whether or not the conditions of the bond have been broken. If it has, the sureties by the letter of their undertaking agree that they will pay a certain sum. Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780; State v. Corron, 73 N. H. 434, 62 Atl. 1044. Nor will the bond be satisfied by the payment of the fine imposed in criminal proceedings against the principal. It is an independent obligation exacted as additional protection to compel an observance of the law, and the sureties are bound by the terms of their undertaking to pay the full amount specified if its conditions have been broken. The requirement of a bond with surety in a fixed sum would be almost a useless formality if it could be satisfied by the payment of a fine entered against the principal. This idea is not embraced either in the letter or meaning of the bond. There is no mention that the satisfaction of the fine will discharge it. The collection of the penalty is a matter between the municipality and the offender, and the sureties have no concern in its payment, and are not responsible for it.

Wherefore the judgment is reversed with directions for a new trial not inconsistent with this opinion.