Statement of the Case.
MONROE, J.
Defendant ha.s appealed from a conviction and sentence, 'based on an affidavit which charges that:
“T. C. Anderson, proprietor, and Jos. Parsy, bartender, conduct a barroom and drinking saloon, * * * and did unlawfully and willfully sell and permit to be sold * * • * to one Alvin Callender, a minor child, * * * intoxicating liquor, the said minor * * * being a delinquent child, for this, for having visited the barroom, * * * where intoxicating liquor was sold and having purchased, in said barroom, intoxicating liquor.”
The case is presented to this court upon a bill of exception to the overruling of a motion for new trial, in which motion the grounds relied on are set forth as follows:
“First. That this court is without jurisdiction to try defendants, as the minor, Alvin A. Cal-lender, was not a delinquent child, within the meaning of the law defining such children.
“Second. That the judgment was manifestly contrary to the law and evidence hereto annexed *1044 and made part hereof; that there was absolutely no evidence to prove the defendants, and Anderson in particular, to be guilty of the crime set out in the affidavit.”
Defendant made the testimony which had been given in the ease, and reduced to writing, part of his motion, and made the reasons assigned by the trial judge for overruling said motion, as, also, the testimony of the minor, Callender, part of his bill of exception.
The minor testified that he was 17 years old; that, on Sunday, June 26, 1910, he visited defendant’s barroom and bought a bottle of beer from Jos. Parsy, who was behind, or near the end of, the counter; and that he did not see defendant. 1-Ie also testified that he was living with his mother in this city, and had been so living for several years; that he had been regularly at work since school closed in 1909; that he was not in the habit of frequenting barrooms; that he had pleaded guilty to a charge, made on June 28, 1910, of being a delinquent child. Erom the testimony of the defendant, Anderson, it appears that he was not in the saloon when the beer was sold; that the man whom he had placed in charge of the business was George Delsey; that Parsy, who sold the beer, was employed as a collector and general utility man; that Delsey had been in his employ for, say, two years; that he learned of the matter here complained of on the following day; and that his employés were instructed not to sell liquor to minors, women, or habitual drunkards. Prom other testimony it appears that two adults visited the saloon with the minor, and made purchases, and that there were, in the saloon, at that time, two men, one of whom was seated behind the counter, and did not rise from his seat, and the other of whom (Parsy) made the sales.
Whether Delsey or Parsy were retained in the employ of the defendant, after he learned of the sale which is the basis of this prosecution, does not appear.
Opinion.
That Callender was not a delinquent child, in the ordinary acceptation of the word “delinquent,” is clearly shown; but Act No. 83 of 1908, for its purposes and for the purposes of the jurisdiction which it confers on the juvenile court, declares, inter alia, that:
“The term ‘delinquent’ child shall mean any child seventeen years of age and under, not now or hereafter inmates of a state institution, * * * visiting any saloon or place of entertainment where spirituous liquors or wines or intoxicating or malt liquors are sold * * * or who * * * violates any law of the state,” etc. Section 9.
And he (Callender), according to his own admission, when prosecuted, and as a witness in this case, would seem to have fallen within the definition; but whether he did or not is a question of fact, within the cognizance of the trial court, whose finding thereon this court is without jurisdiction to review. In other words, Act No. 83 of 1908 declares who, for its purposes, shall be considered a delinquent child; but whether a particular child is within the definition is a question of fact.
With regard to the second ground presented by the motion for new trial, to wit, that “there was absolutely no evidence to prove the defendants, and Anderson in particular, to be guilty of the crime set out in the affidavit,” it would seem that, if this court can review the evidence adduced against the appellant, it might, with the same propriety, have reviewed that which established the guilt of his codefendant, who has not appealed from his sentence.
The act (No. 176 of 1908) under which the affidavit was made declares:
“Sec. 6. That, hereafter, it shaíl be unlawful for any person * * * conducting a barroom * * * to sell or permit to be sold * * * any intoxicating liquors to * * * minors.” etc.
And a penalty is imposed for violation of the prohibition.
*1046 The Constitution (article 85) provides that the appellate jurisdiction of this court “shall extend * * * to criminal cases (of a certain class) on questions of law, alone.” And Act 83 of 1908, which, by an amendment adopted in 1910, has been, practically, incorporated in the Constitution, also provides (section 2, par. 5) that:
“Appeals from the juvenile court shall be allowed, on matters of law, only, and shall be direct to the Supreme Court of this state.”
Whether the appellant permitted intoxicating liquor to be sold to a minor, as charged, is as much a question of fact as whether his codefendant and employs, who. has not appealed, made the sale, and, being a question of fact, is not reviewable in this court. The trial judge in overruling the motion for new trial said (inter alia):
“It is a fact, as shown by the evidence, as shown by the state and defense, that Mr. Anderson is the proprietor of this establishment, and that Mr. Anderson was not' present in the saloon or restaurant that day; and, further, that Mr. Anderson had instructed this young man — not only this young man, the co-defendant, but the other employés — to not, under any circumstances, violate the laws of the state. And I believe that statement, and believe all Mr. Anderson’s statements as to the matter; but the evidence showed that' this young man was there in the place of business, rigged up as bartender, had on his apron, and that he served this boy and those men. There is no evidence to show — of course, I don’t know, but I say that there js no evidence to show— whether Mi-. Anderson took any action against this young man or not, and I am inclined to feel that the majority of decisions throughout this country would hold the proprietor. This Gay-Shattuck law was, I imagine; made by direction of that invisible and invincible power which dominates in all such matters, and is known as the police power, and has under its ■control all matters of this kind. This law was made, I presume, by that great power which rests in the Legislature, and the intent of the law was, I think, to cover all infractions and to cover all people who might possibly be connected with the infraction. I know that it is going rather far to hold the proprietor for an act of his agents, but that seems to be the intention of the law, and considering all the facts, and I believe I have stated the matter fully, I feel I must stand by the decision which I gave last week in this matter; and, therefore, I overrule the motion for a new trial, so earnestly argued and so intelligently put by Mr. Generelly for the defense.”
It may be that the learned judge meant by his remarks that, notwithstanding that defendant was not present when the liquor in question was sold, and did not know of the sale, and notwithstanding that he had prohibited his employés from making such sales, he (the judge) found, as a fact, that he had permitted the sale, and hence was guilty of the offense charged against him; for the defendant’s absence, when the sale was made, and his ignorance, at the time, of the fact that it was made, had but little bearing upon the question whether the sale was made with his permission, nor did the fact that he had issued orders prohibiting such sales necessarily afford a solution of that question.
Mr. Anderson testified that he was always absent from his barroom on Sundays, and that he had issued a “standing order” to his employés with regard, not only to the GayShattuck law, but to “all the laws.” And yet he did not pretend to deny that his place was always kept open on Sunday (though there is such a thing as a “Sunday law”), nor did he say that he had ever done anything by way of enforcing his “standing order”; there being no suggestion, for instance, that, in this particular case, he reprimanded or discharged either Delsey or Parsy for disobeying it and allowing it to be disobeyed. In fact, the mere giving of the order was, under the circumstances presented, a matter of no significance whatever; the important question being whether it was given with the intention that it should be obeyed or disobeyed. And, as it appears to have been disobeyed, with impunity so far as any action by defendant was concerned, the judge a quo may have concluded that it was so intended; the burden of proof resting, as we think, on the defendant, to show, to the satisfaction of the court, not the mere utterance or writing *1048 of an order, but a bona fide purpose and effort on his part to prevent his agents from conducting his business in violation of law.
“Where the defense is that the illegal sale was made by the servant or agent, in disobedience of an order or direction requiring him not to make such sales, it must be shown that the order was given honestly and in good faith, and with the intention and expectation that it would be obeyed; connivance on the part of the employer will destroy the effect of such order; and this is a question for the jury.” 23 Oyc. 208, and authorities there cited.
At the head of the note to the case of State v. Gilman, reported in 16 L. R. A. (N. S.) 786, we find the following, to wit;
“As shown by a note to Bryan v. Adler, 41 L. R. A. 660, in which the earlier cases .are treated, there is a decided conflict among the cases as to the criminal and penal responsibility of one for the violation of the liquor laws by copartner, agent, or servant. This conflict, however, is among the cases in which the violation of the law was without the knowledge or consent or express or implied authority of the defendant. It is clear, of course, that, if the violation was with defendant’s express or implied authority or with his knowledge or consent, he is as criminally responsible as if he had, himself, directly violated the law. The question, however, sometimes arises, in this class of cases, as to whether the evidence is sufficient to warrant a finding of express or implied authority, or of knowledge or consent. It is to be observed, in this connection, that the fact that the defendant gave the copartner, clerk, or agent formal instructions not to violate the law, or even, specifically, not to do the particular acts which would constitute a violation of the law, does not take the case out of this class, since there may be a question whether such instructions were given in good faith and whether the defendant did not really intend that the laws should be violated.”
And the annotator cites the following cases in which the defendants were held criminally liable for illegal sales of liquor, though it appeared that they had formally instructed their agents or employés not to make such sales: Com. v. Coughlin, 182 Mass. 558, 66 N. E. 207; Moore v. State, 64 Neb. 557, 90 N. W. 553; State v. Terry, 105 Mo. App. 428, 79 S. W. 998; People v. Kriesel, 136 Mich. 80, 98 N. W. 850; Banks v. Sullivan, 78 Ill. App. 298; People v. Longwell, 120 Mich. 311, 79 N. W. 484; In re Cullinan, 39 Misc. Rep. 636, 80 N. Y. Supp. 607; Id., 85 App. Div, 621, 82 N. Y. Supp. 1098; In re Gordon, 16 Monaghan (Pa.) 25.
Upon the other hand, the trial judge may have been of the opinion (and his ruling in refusing the new trial is susceptible of that interpretation) that the offense denounced by the statute is complete, as to the owner and licensee of the barroom, -when intoxicating liquor is there sold to a minor, whether it be sold by such owner, himself, or by an agent, acting -within the scope of his employment, although without the knowledge of the owner and in violation of instructions given by him in good faith and with the intention that they should be obeyed. And, in that view of the matter, the question here presented is one of law, since we take the facts as the trial judge has found them and address ourselves to the inquiry whether, upon the facts so found, an offense has been established, within the meaning of the statute. In the case of State v. Locicero, the view was expressed that the question should have been raised in the trial court, prior to conviction; but the court, nevertheless, proceeded to rule upon the question, as presented, and upon its merits, saying:
“Whether conducted personally or through agents or employés, it remains under the terms of the statute, the owner’s duty to see that the statute is not violated. The licensee is criminally liable for the illegal sale, particularly in the presence of the asserted fact, which nobody disputes, that his employé remained in his employ after he had sold the intoxicant as before mentioned. If that which has been heretofore stated were not the law, the law would be shorn of its efficacy and its evident intention frustrated.” State v. Locicero (No. 18,492) ante, p. 1035, 54 South. 342.
In view, then, of the fact that the instant case, like the case cited, was tried before the judge, without a jury, and though we still adhere to the view that the more regular practice would have been to have invoked a ruling upon the point here relied on and to have reserved a bill, during the trial *1050 and before the conviction, we shall proceed to consider the question as presented.
The authorities upon the subject, pro and con, are collected in the notes to the case of State v. Gilmore (80 Vt. 514, 68 Atl. 658), as published in 13 Am. & Eng. Ann. Cas. 321, and in 16 L. R. A. (N. S.) 786.
The case was decided in 1908, and involved the interpretation of a statute containing the provision:
That no liquor shall be sold or furnished to a minor, for his own use or the use of any other person nor to an habitual drunkard.
The opinion of the court reads, in part, as follows:
“The case comes before the court upon an agreed statement of facts, signed by the state’s attorney and the respondent. The material facts are that the respondent, on December 24, 1906, was the holder of a first-class license to sell intoxicating liquor under said act; that, on that day, a minor purchased intoxicating; liquor of one of his employés, paid him for it, and drank it in his presence, on the premises ; that the liquor sold was taken from respondent’s stock of liquors, kept by him for sale under his license; that the respondent was not upon the premises at the time of the sale, and had no knowledge of it, did not authorize it, nor approve it, but, on the contrary, had previously instructed all his employés not to sell to minors or drunkards, or in any manner violate the conditions of his license. The question is whether the act complained of was, in law, the respondent’s act, when committed by his servant. The state contends that the respondent is answerable for the act, in accordance with the maxim, ‘Qui facit per alium facit per se.’ The respondent claims that, as the sale was made without his knowledge and contrary to his instructions, the employé, alone, is liable.
“Intent is not an essential ingredient of the offense charaed. (Citing authorities.) In Com. v. Savery, 145 Mass. 212. 13 N. E. 611, tjie respondent sold an intoxicating liquor by mistake. Held, that his belief that it was not intoxicating was no defense.”
The learned court then refers to a number of cases in which conflicting views are expressed, and holds: That the statute under consideration was intended to prohibit and prevent the sale of liquor to minors and drunkards; that the license law provides for the selection of licensees in whom confidence can be placed; that a licensee cannot be excused from criminal liability if he sell to a minor, however great may be the imposition practiced on him by the person to whom he sells; and that he cannot escape such liability by delegating the conduct of his business to an agent, with instructions not to violate the prohibitions of the law, if the instructions are not obeyed. And the opinion concludes:
“The offense is complete when such sale has been made, under and by virtue of the license and in the line of respondent’s 'business as the licensee, and it is immaterial whether the act was done by the licensee, himself, or by his employé. When he engaged in the business, he assumed all the risk of his employés’ violating the condition of his license. Their acts were his acts, when done in carrying on the licensed business.”
One of the cases referred to in the opinion is that of Paducah v. Jones, 126 Ky. 809, 104 S. W. 971, 31 Ky. Law Rep. 1203, from the opinion in which we find the following excerpt in the note (13 Am. & E. Ann. Cas. 326):
“If a criminal intent was necessary to constitute the offense of selling liquor on Sunday, or to a minor, or without a license, in violation of law, it would follow that the employer, who had directed his clerk not to sell, or if the sale was made without his knowledge or consent, could not be held criminally liable, as the intent, necessary to complete the offense, would be lacking; but there are a number of statutory offenses in which the law does not inquire into the intention of the person who violates them. I-Iis intention is not taken into consideration. It is totally immaterial whether it was good or bad. It is the act constituting the offense that the law looks to and punishes. * * * Therefore we do not hesitate to say that the employer may be proceeded against, criminally, for the act of his clerk or agent, who, in violation of law, sells or furnishes liquor, acting within the scope of his employment, and, this, without reference to the instruction or direction given to him by his employer. When a person obtains a license from the state to sell liquor, and, for his own convenience. and advantage, employs other persons to conduct the business for him, he will be charged with the responsibility of their acts, and cannot shield himself from prosecution on the ground that what they did was contrary to his wishes and in disobedience of his command. He assumes the risk of their acts in the business for which he has employed them, and, if he desires to save himself, he must see to it that his serv *1052 ants, while acting for him, do not violate the law.”
In the note from which the above excerpt is taken, other cases are cited, as supporting the propositions therein stated, from England, Canada, Arkansas, District of Columbia, Georgia, Illinois, Iowa, Kentucky, Maine, Maryland, Michigan, Mississippi, North Carolina, Virginia, Washington, West Virginia; and also, as supporting contrary views, from Alabama, Connecticut, Indiana, Nebraska, New York, New Hampshire, Ohio, Pennsylvania, Tennessee, Texas.
Among the statutes, which were construed, the learned Vermont court found that the statute of North Carolina prohibits the sale of liquor to minors “directly, or indirectly”; that the statute of Georgia reads, “No person * * * t,y himself or another, shall sell,” etc.; that the Iowa statute declares it “unlawful for any person, by agent or otherwise,” to sell; that the statute of Maryland is like that of Vermont; that the Wisconsin statute prohibits the sale, to minors, “knowingly and willfully”; and that the statute of West Virginia provides that a sale by one person for another shall be deemed a sale by both.
The Louisiana ease cited is Minden v. Silverstein, 36 La. Ann. 912, in which the defendant appealed from a sentence imposing a fine for the violation of a town ordinance prohibiting the sale of liquor on Sunday, and attacked the legality and constitutionality of the ordinance. This court sustained the ordinance, and, having done so, proceeded to decide the case as follows:
“The feature of the cause which grants to this court jurisdiction over the legal question involved also vests it with jurisdiction over the facts. That element of jurisdiction, which was left in sqme doubt by the Constitution of 1868, has been materially elucidated by the provision on this subject in the present Constitution, which reads: ‘In such cases, the appeal, on the law and the fact shall be directly from the court in which the case originated to the Supreme Court.’ State ex rel. Boutroue v. Judge, 30 La. Ann. 415. The evidence shows that the liquor was sold at the defendants’ store, on a Sunday, by one of their employés, who was not a clerk or a bartender, but merely a porter, whose duty was to do menial work in the store; that the liquor was sold out of the presence of either of the defendants, who had forbidden their employés to sell liquor on Sunday; and that the porter was discharged for the reason of his having sold the very glass of liquor which has given rise to this controversy. As the porter acted in the premises beyond the functions of his employment and without the knowledge or consent of defendants, and as the evidence does not show that they ratified or approved his act, but, as it appears, on the contrary, that they discharged him on that account, we cannot agree with the mayor in holding them as transgressors of the ordinance, under the circumstances as shown by the record. In our opinion, the case is with them on the facts, and for that reason we must reverse the judgment of the mayor.”
In the instant case, we are endeavoring to let the facts severely alone, and are, just now, reviewing the judgment of the court a quo upon the assumption that it convicted the defendant because it held the opinion that, as a matter of law, the offense with which he is charged required no criminal intent, and was complete, when the beer was sold to the minor by his agent, acting within the scope of his employment; for it will be observed that, althougn defendant testifies that Parsy (who sold the beer) was a general utility man, the trial judge finds that he was “there, in that place of business, rigged up as a bartender, had on his apron, and that he served this boy and those men.”
The cited case has therefore no appreciable bearing upon the question here to be decided.
Quoting, a little more at length, the provision of the statute now under consideration, it reads (Act No. 176 of 1908, § 6):
“That, hereafter, it shall be unlawful for any person, firm or corporation, conducting a barroom * * * or other place where * * * intoxicating beverages are sold * * * to sell or permit to be sold, or to give or permit to be given, any intoxicating liquors to women, or girls or minors,” etc.
As those creations of the law, known as corporations, are included among the natural persons against whom the prohibition *1054 is directed, and as an ideal being which has no existence, save within the limits of the law of its creation, is incapable of harboring an intent which the law denounces as criminal, it is manifest that the offense denounced By the statute was intended by the lawmaker to be complete by the mere fact of the sale of intoxicating liquor to persons of the classes mentioned, regardless of the intent of the seller; so that, the case being relieved of that element, there is no reason why the same principle should not be applied as is applied in civil suits for the recovery of damages inflicted by individuals, or corporations, through agents or servants, acting within the scope of the authority conferred on them, the rule in such eases being that if the agent is authorized to do the thing and is left to determine the manner in, and the conditions under, which it shall be done, the principal is liable for his abuse of the discretion so vested in him and for the errors committed in its exercise.
The author of the valuable monograph to which we have already referred (being the note to State v. Gilman, 13 Am. & Eng. Ann. Cas. 327) says:
“The conflict existing in regax-d to the criminal liability of a licensee, for illegal sales of liquor by his servant, against instructions, does not appear in the decisions passing upon his civil liability for such unauthorized acts. It is well settled that a licensee is liable for all illegal sales made by his servant in opposition to his orders or instructions or without his consent, arising either under the civil damage acts or under other statutory enactments making him civilly liable for an illegal sale.”
And there follows a citation of adjudged cases from many of the states, including those which hold that there is no criminal liability in such cases; and yet, as we have said, if criminal intent is not required for the completion of an offense, the liability in a criminal prosecution would seem to rest upon the same principle as in a civil suit, to wit, that a natural or judicial person, exercising the right to select an agent, and vesting such agent with the power to do, or not do, certain things, as they may be proper and lawful, or improper and unlawful, must be held responsible for the manner in which that power is exercised.
Comparing the statute here in question with some of those to which reference has been made, we can discover no difference in meaning or purpose between a law which makes it unlawful for a dealer in intoxicating liquors “to sell, directly or indirectly,” to minors, and one which makes it unlawful for such dealers to "sell, or permit to be sold,” such liquors to minors (save, perhaps, that, in the one case, the prohibition is directed against all dealers, and, in the other, only to retail dealers); the prohibitions against selling, “directly or indirectly,” and against selling or permitting to be sold, having, so far as we can see, the same meaning, and both having the same meaning as a prohibition directed against “any person or persons by agent or otherwise,” and as a provision that “no person * * * by himself or another shall sell.” The New Hampshire statute, as we have seen, merely declares that “no liquor shall be sold or furnished to a minor.” Our statute declares that it shall be unlawful for “any person, * * * conducting a barroom, * * * to sell, or permit to be sold, or to give or permit to be given,” any intoxicating liquors .to a minor. Manifestly, the use of the word “permit” was not intended by the lawmakers to so weaken the force of the prohibition against selling liquor to minors as to allow the owner of a barroom to escape liability for all such sales made by his barkeeper, save those which he may give him special permission to make. The law was framed upon the theory that what one does through another, and reaps the benefit of, he is considered as doing himself and as assuming the responsibility for, and that one “permits” a thing which is done, in the usual course of his business, by agents employed *1056 by him, placed in a position to do it, and vested'with authority to determine whether, in a particular case, it should be done or left undone.
We therefore conclude that, under the Act No. 176 of 1908, any person, firm, or corporation, conducting a barroom or other place where intoxicating beverages are sold, is criminally liable for the sale of intoxicating liquors to a minor, whether sucn sale was made by such person, firm, or corporation, or by an agent or employe, placed in a position to make it, with authority to determine whether to do so in any given case; and, this, whether the sale be made with or without the knowledge, or against the instructions, of the principal or employer.
The judgment appealed from is, accordingly:
Affirmed.