## Commonwealth v. Adams Express Company.

(Decided February 19, 1918.)

### Appeal from Bath Circuit Court.

1. Intoxicating Liquors—Transportation.—A transportation company is penally liable under the provisions of subsection 3 of section 2569b of the Kentucky Statutes not only for failing to furnish the "separate book" required by that subsection, but also for the failure of its delivering agent to record in that book the matters required by the subsection; and for a failure of such agent to require the consignee of intoxicating liquors to subscribe his name in that book before delivering to him the package, since the offenses therein created are complete by the doing or the omitting to do the forbidden acts regardless of any element of intent and may be committed by a principal through an agent.

2. Intoxicating Liquors—Transportation.—The failing to require the signature of the consignee in cases treated of by the subsection is a part of the act of delivery of the transported goods which is within the scope of the agent's duty or within the line of his employment, and his failure in any particular to observe the requirements of the statute is a failure of his principal to do so, for which the latter is liable.

CHARLES H. MORRIS, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellant.

LAWRENCE MAXWELL, MAXWELL & RAMSEY, JOSEPH S. GRAYSON and W. B. WHITE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, Adams Express Company, was indicted by the grand jury of Bath county for violating one of the provisions of sub-section 3, of section 2569b, of the Kentucky Statutes, in failing to require C. Coyle, the consignee of a package of liquor, upon its delivery to him to sign his name in the separate book which that subsection requires the company to furnish and to contain certain entries named therein. A demurrer filed to the indictment was sustained and the indictment dismissed, and complaining of that judgment the Commonwealth prosecutes this appeal.

There is no complaint about the form or phraseology of the indictment, and we gather from briefs in the case that the court accepted the contention of the defendant, which is argued here, that the omission complained of as constituting the offense is one required by the statute to be performed not by the express company but by the delivering agent. In support of this contention it is insisted that the statute imposes two duties, one being that the express company or carrier shall furnish a book in which the required statements shall be made, and that it is the duty of the express company to furnish the book, and when done it has performed all that is required of it by the entire statute, and that the entries required to be made in the book is a duty imposed exclusively upon the agent, which, if not done, he alone is answerable and not his principal, the carrier.

There can be but little doubt that the statute was enacted under the police power of the state and is essentially a police regulation. Its design was to aid the officers of the law in their efforts to enforce the observance of the various statutes looking to the regulation and restraint of shipments and deliveries as well as sales of liquor in local option territory, and to furnish evidence to such officers whereby they might keep a vigilant eye upon the handling of that commodity. The penal part of the statute is in these words:

"Any railroad, express or other transportation company, or any employee or agent thereof, who fails, neglects or refuses to comply with the provisions of this section, or who makes or causes to be made, any false entry in said book, shall be deemed guilty of a misdemeanor, and for each offense shall be punished by a fine of not less than fifty dollars, nor more than two hundred dollars, or imprisoned in the county jail not less than thirty days nor more than six months, or both such fine and imprisonment, in the discretion of the jury."

It is insisted that the use of the disjunctive "or" occurring between the naming of the principal and agent or employee in the clause enumerating the persons who might be punished for violations of the statute indicates that it was the intention of the legislature to punish the carrier for the violation of its duty in failing to furnish its agent a book, and to punish the agent for violating his duty in failing to make or requiring to be made

the proper entries in the book. But we do not find ourselves able to agree with this interpretation of the statute.

In the case of City of Paducah v. Jones, 126 Ky. 809, this court had under consideration, and exhaustively treated, the question of the liability of the principal criminally for the acts of his agent. In that case Jones owned and operated a store, connected with which was a saloon. He had been required by an ordinance of the city upon the granting of license to him to execute bond that he would not violate any of the laws while exercising the privilege conferred by the license. A clerk in violation of law sold whiskey on Sunday and the city sought to collect the penalty provided in the bond for that violation. In defense it was insisted that the city could not recover because the principal could not be made guilty for the act of his clerk, which the principal alleged was done in violation of his instructions, although the Commonwealth offered to prove by the clerk that he regularly opened the establishment on Sunday and sold liquor on that day, and that on that very same day the owner had instructed him to "open up." The divergent views of the different courts in regard to criminal responsibility of the principal in such cases are referred to and discussed in the opinion, but the court adopted the view of Judge Cooley in his opinion in the case of People v. Robey, 52 Mich. 577, as expressed in this language which this court quoted from his opinion:

"I agree that as a rule there can be no crime without a criminal intent; but this is not by any means a universal rule. Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

Further along this court in the same case said: "The employer has placed it within the power of his clerk to observe or disobey the law. He has left it to his discretion and judgment, and is answerable for his conduct." It is further pointed out in the opinion as a reason for the rule adopted that if a principal engaged in a business in the prosecution of which the prohibited act is done employs an agent to conduct the business for him "he will be charged with responsibility for their acts, and can not shield himself from prosecution on the

ground that what they did was contrary to his wishes or in disobedience of his command. He assumes the risk of their acts in the business for which he has employed them; and, if he desires to save himself harmless, must see to it that his servants while acting for him do not violate the law.''

It is altogether unnecessary in this case to enter into a discussion of the distinction between crimes in which an intent to commit them on the part of the perpetrator must be shown and those where the crime consists in the doing of the forbidden act regardless of the intent, for it is perfectly manifest that the offense here involved comes within the latter class.

It is insisted that the rule adopted by this court in the cases of L. & N. R. R. Co. v. Commonwealth, 99 Ky. 663, and Equitable Life Assurance Society v. Commonwealth, 121 Ky. 534, is controlling here and furnishes authority for the ruling of the trial court. But we do not so construe the doctrine of those opinions. In the first case mentioned the railroad company was indicted under section 795 of the Kentucky Statutes for failing to furnish separate coaches for its white and colored passengers. The testimony showed that the train in question contained the required separate coaches, but that the conductor and those in charge of the train did not assign the passengers to the proper coaches provided for them, and it was held that the railroad company was not liable to a prosecution for such acts on the part of the conductor. The railroad company had fully complied with the section of the statute, *supra,* in furnishing separate coaches, and also the following section, 796, by making no difference or distinction in the quality or convenience of the respective coaches, and it was therefore not liable for the penalty provided by section 797, which is aimed at a violation of the two preceding sections. The section of the statute which was really violated in that case was section 799, which imposes the duty upon conductors or those in charge of the train to assign the passengers to their respective coaches or compartments, and for a refusal to do which there is a penalty provided by section 800 of the statute. Clearly, in that case, the prosecution should have been against the conductor, there being no offense committed by the railroad company, but only by himself, as is expressly provided by the statute.

In the Equitable Life Assurance Society case the company was proceeded against on account of one of its agents, in violation of express instructions, allowing rebates to the insured upon issuing a policy upon his life, contrary to the provisions of section 656 of the Kentucky Statutes. As stated, it was shown that this was in violation of express instructions, and the agent was promptly discharged upon the company being notified of his violations. But in that case it will be observed that it is no part of the business of life insurance to grant rebates. It is an act totally separate and apart from the scope of the agent's duty in the transaction of the business of his principal. The prohibited act is entirely collateral to the business which the principal is authorized to conduct, and generally if not always inures to the financial benefit of the agent. In such a case it is no part of the duties of the agent in prosecuting the business of his principal to grant rebates, and his act in doing so is not only one personally beneficial to himself but wholly outside of his duties as agent.

In the instant case the defendant express company was engaged in the business of transporting and delivering merchandise, a part of which was the package of whiskey, to Coyle. Its obligation to the consignee in carrying out its contract was not complete until the package was delivered and it was the duty not only within the apparent scope of its agent to make such delivery, but such duty was necessarily expressly conferred upon him, and it would be a strange rule that would excuse the company for any acts of its agent, either of commission or omission, while performing a necessary part of the contract to transport and deliver. It was as much the duty of the agent at destination to observe the law while making the delivery as it was that of some other agent to prepare and furnish to him the book; for if, as we have seen from the Jones case, an *individual* is charged with criminal responsibility for the act of his agent, and "can not shield himself from prosecution upon the ground that what they (agents) did was contrary to his wishes or in disobedience of his command," much more so would that rule apply to a principal who is not a natural but an artificial person, since such a principal must necessarily act through agents.

Moreover, if the purpose "to require a degree of diligence for the protection of the public which shall render

violation impossible," as stated by Judge Cooley in the quotation, *supra,* be the correct foundation for the rule holding the principal criminally responsible for the acts of his agent, there is abundant room for its application here where the entries required to be kept in the book are not only open to public inspection, but are made *prima facie* evidence of the facts therein contained. Surely the making of a record of such transcendent importance was not intended to be entrusted by the legislature to the vigilance or diligence of the agent alone. It was clearly the intention to make the company responsible for a failure to require the proper entries to be made in the book, and to demand of it suitable and appropriate diligence for the attainment of that end.

We therefore conclude that the court was in error in sustaining the demurrer to the indictment, and the judgment is reversed with directions to set aside that order, and for proceedings consistent herewith.