UNITED STATES v. RUBIN et al.

(District Court, E. D. Pennsylvania. December 1, 1915.)

No. 3794

1. COURTS ☞334—FEDERAL COURTS—FOLLOWING STATE PRACTICE.

Though under the Pennsylvania practice equitable defenses are admissible in assumpsit on a bond, where the United States is party to a suit in the state in an effort to enforce one of its laws, the laws and established practice in the state are considered as those of a foreign jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 899, 909, 910; Dec. Dig. ☞334.]

2. ACTION ☞24—EQUITABLE DEFENSES IN LEGAL ACTIONS.

Under Rev. St. § 961 (Comp. St. 1913, § 1599), declaring that in an action to recover the forfeiture provided in a bond, where forfeiture appears, judgment shall not be for the penal sum, but for such sum as is due according to equity, an equitable defense may be set up in an action on an indemnity bond given under the Immigration Acts.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 153–155; Dec. Dig. ☞24.]

3. ALIENS ☞53—BONDS—INDEMNITY BONDS.

As no executive officer may admit an alien against the declared will of Congress, a feeble-minded immigrant cannot be admitted upon the giving of an indemnity bond; hence a bond given to enable friends of a feeble-

minded person to care for him during the period when it was impossible to deport him, because his native country was in a state of war, which was conditioned on keeping the incompetent in an asylum, etc., is not an indemnity bond, and the provision for damages contained therein must be considered, not as a penalty, but as a provision for liquidated damages, which, owing to the circumstances of the case, could not be readily ascertained.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬦⟿53.]

4. UNITED STATES ⬦⟿59—POWERS OF—GENERAL GOVERNMENTAL POWERS.

The government has a corporate existence for the necessary purpose of holding property and entering into contracts. Consequently the government has the common-law power to receive a voluntary bond given by persons desiring to care for a feeble-minded immigrant while awaiting deportation, which could not be immediately had because his native land was at war.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 42; Dec. Dig. ⬦⟿59.]

5. DAMAGES ⬦⟿79—LIQUIDATED DAMAGES.

A provision in a bond fixing the amount of forfeiture will be considered as liquidated damages, against which equity will not relieve on breach, where the damages are real, but are incapable or difficult of actual measurement; but, in case the amount fixed is unconscionable, equity will grant relief.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. ⬦⟿79.]

6. ALIENS ⬦⟿53—INDEMNITY BONDS—ACTIONS—DEFENSES.

Where friends of a feeble-minded immigrant, who could not for that reason be received in the country, gave a bond so that they could care for him during the time he was awaiting deportation, and the bond contained several conditions, the single forfeiture prescribed will, in a suit for breach of only one of the conditions, be considered as a penalty, requiring submission of the question of damages to the jury, and permitting the introduction of equitable defenses, though the measurement of such damage may be difficult.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬦⟿53.]

At Law. Assumpsit by the United States against Simon Rubin and Jacob Fleischman. On rule for judgment for want of a sufficient affidavit of defense. Rule for judgment discharged.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

William Linton and Harry A. Mackey, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The beginnings of this controversy are to be found in Immigration Law Feb. 20, 1907, c. 1134, 34 Stat. 898, as amended by Act Cong. March 26, 1910, c. 128, 36 Stat. 263. The facts of the case are these:

An intending immigrant was found by the special board of inquiry, upon certificate of the medical examiner, to be feeble-minded. There was no appeal from this finding. The alien is in consequence within the class absolutely excluded by the act of Congress. Ordinarily this would have been followed by an order of deportation. This would

---

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

have meant deportation to Russia. As Russia was and is at war, such an order could not have been and cannot now be executed, if made. As a consequence, the alien must temporarily be detained and cared for. His friends voluntarily offered to care for him and to give bond in such sum and with such conditions as the immigration authorities thought proper. The bond in suit was accordingly given. It is in the form and with conditions provided for in another provision of the act of Congress, and contains three additional conditions, with two of which we are now concerned. One of them is that the alien during his stay in this country will be committed to and kept under the care of some institution having charge of feeble-minded persons for treatment. The other is that reports will be made of the occupation and whereabouts of the alien.

The statement of claim avers a breach of both conditions and demands judgment for $1,000, the amount of the bond. The affidavit of defense avers impossibility of the obligors committing the alien to a hospital for treatment, because the fact was that after examination the alien was found not to be feeble-minded, and that no institution would receive him as such. The affidavit asserts the further equitable defense that the bond is one of indemnity only, and that the plaintiff had sustained no loss.

We have ignored the suggestion that the plaintiff is not entitled to judgment because a copy of the bond sued upon had not been made part of the statement of claim, because the averment upon which this part of the defense was based has been withdrawn, and we have been asked to limit the consideration of the defense to the averment of fact and the legal position first mentioned.

[1] As the claim of the plaintiff is based upon an explicit acknowledgment of the debt and an absolute promise to pay it, and as the breach of the conditions is not denied, were the defense confined to a legal defense, judgment must be rendered in favor of the plaintiff. The defense, however, is not so confined.

Under the system which pertains in Pennsylvania of administering equity through legal forms, equitable defenses are always admissible in actions of assumpsit. Indeed, to all intents and purposes an action in assumpsit is a bill in equity. Inasmuch, however, as the United States is a party to this action, and as it arises out of an effort to enforce a law of the United States, the laws and established practice of Pennsylvania are those of a foreign jurisdiction.

[2-5] Section 961 of the Revised Statutes, however, contains a similar provision. It is, in substance, that in actions upon a bond such as the one in suit judgment shall not be rendered by the court for the penal sum, but for such sum as "is due according to equity," and that, if the amount is "uncertain," the cause shall, upon demand of either party, be submitted to a jury. If, therefore, this bond is one for indemnity purposes only, judgment must be refused until the damages are shown. The defense interposed may therefore be set up. Were this bond the bond authorized, and under certain circumstances required to be given by the Immigration Acts referred to (as the argument made on behalf of the defendants assumes), we would enter-

tain no doubt that it was for indemnity purposes only. This is, however, clearly not such a bond. Such a bond is given only in the case of an alien who may be admitted in the exercise of the discretion of the Secretary of Commerce and Labor. This alien belongs to the absolutely excluded class, and no executive officer may admit an alien against the declared will of Congress. This bond, therefore, if anything, is a voluntary bond, which has been accepted, not in pursuance of any act of Congress that it may be so accepted, but in pursuance of what, for want of a better phrase, may be called the common-law right of the United States. That it has this right we think is beyond successful denial. Every government, besides having an existence for the purpose of the exercise of its political powers, is an entity, is a person in law, has what may be called a corporate existence for the necessary purpose (among other things) of acquiring, holding, and asserting title to property and entering into contracts. Its rights and powers in this respect are analogous to, if not the same as, those of an ordinary corporation. Its right to be made the obligee in and to accept a voluntary bond given to it we think to be clear upon accepted legal principles, and to have been settled by a number of adjudged cases, of which it is sufficient to cite U. S. v. Tingey, 5 Pet. (30 U. S.) 115, 8 L. Ed. 66.

The legality of the bond and its breach, and that any action upon it is open to the equitable defense here interposed, being found, we are brought face to face with its merits. Out of the declared policy of the law not to enforce gambling contracts, and out of the weakness to which mankind is prone to wager any amount on a future event, or the obligor's ability to do a certain thing, has arisen the equitable doctrine of relief. A helpful guide to its application and to its limitations may be sought in almost innumerable cases. The expression which defines these limitations as accurately as any phrase can is that which is usually inserted in contracts where the purpose is to recompense by the payment of an agreed sum the party who suffers loss because of nonperformance. The phrase is, after stating a stipulated sum which the party agrees to pay, that it is to be paid "not as a penalty, but as damages fairly liquidated and agreed upon by the parties, and not to be relieved against." The phrase recognizes the distinction in damage claims between cases in which the damage is capable of easy and accurate admeasurement, and any disproportion between the actual and the agreed damages may be readily discovered, and the other class of cases in which the damage is real and substantial, and yet its admeasurement is so difficult that an agreed sum is not only a fair adjustment of the amount, but practically necessary. In the latter class of cases equity leaves the parties to their legal rights unless the amount fixed is so disproportional to any consideration of real damage as to be unconscionable, and to justify a finding that there had been no real adjustment of the amount and that the formal agreement was a pretense, and its real purpose to annul the equitable doctrine of relief. Obviously, equity can relieve the defendant from the legal obligation of the second agreement as readily as from the first contract.

The purpose of the condition of this bond is manifest. The United States wished protection, not only against the possibility of the expense

of deportation and of finding the alien in order that he might be deported, but also against the possible consequences of his temporary sojourn. He might set up relations here through marriage or otherwise which would result in the very evils which it is the main purpose of the immigration laws to minimize. The damage which would flow is one which cannot be certainly traced into a money loss of any ascertainable amount. It is none the less real, and one which has as an element a pecuniary loss. Unless, therefore, the indemnifying contract may lawfully include a reasonable and fair, and therefore equitable, agreed adjustment of the damages, it is wholly nullified. The bond in suit embodies a contract of this character. The above expression of the doctrine of equitable relief, as limited by an agreed liquidation of the amount of the damages, finds sufficient support in (among many others) the following cases: U. S. v. Rosenthal (D. C.) 210 Fed. 555; U. S. v. Bethlehem Steel Co., 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731.

[6] The foregoing propositions (in formulating which we have followed the views of counsel for the United States) are urged by the plaintiff as leading to the entry of judgment in its favor. The argument, however, overlooks this feature. There are several conditions, but only one sum named in the bond. There is no breach of some of these conditions averred. How, then, can we find that the parties agreed to the amount of the damage flowing from the breach which is averred?

The rule is that, where the parties to a contract have agreed that a sum shall become payable on a single event, such sum may be regarded as liquidated damages, but where the sum is made payable to secure the performance of several stipulations of varying degrees of importance, it is clear the stipulated sum must be regarded as a penalty, and not as liquidated damages for a part default. Had the breach averred been in the performance of the only condition to be performed, the argument addressed to us would have force. As the fact is otherwise, the argument has no application.

The rule for judgment is discharged.