## UNITED STATES v. WANDMAKER et al. *

(Circuit Court of Appeals, Eighth Circuit. August 1, 1923.)

No. 6221.

1. **Intoxicating liquors ⟝84—Commissioner of Internal Revenue authorized to determine olibgations and conditions of bond given for permit to purchase liquor.**

Though the declared purpose of National Prohibition Act, tit. 2, § 6, authorizing the Commissioner of Internal Revenue to require a bond before issuing a permit to purchase liquor for manufacturing purposes, is "to insure compliance with the terms and provisions of this title," it also authorizes the Commissioner to fix the form and amount of the bond, which clearly gives him the right to determine its obligations and to name the condition that would constitute a breach.

2. **Bonds ⟝135—On breach of penal bond given to state, entire amount forfeited.**

On breach of a penal bond given to the state to insure performance of a contract for the public benefit, or to do or refrain from doing an act in the public interest or in the furtherance of a public policy, in the absence of proof of contrary intent, recovery may be had of the full amount of the bond on the theory that such was the intent of the parties.

3. **Intoxicating liquors ⟝87—Bond to secure conditions of permit to purchase liquor held for indemnity only.**

Where a bond running to the United States, given to insure compliance with the conditions of a permit to purchase liquor for manufacturing purposes, under National Prohibition Act, tit. 2, §§ 4, 6, provided that Liberty or other bonds which had been deposited with the director in a sum equal to the face of the bond might be sold, "and the proceeds applied to the payment of internal revenue taxes, interest and penalties, which may be due, and in satisfaction of any liabilities incurred hereunder, * * * and the residue, if any, paid to said principal," was obviously for purpose of indemnity for unpaid taxes, interest, or penalties which might be imposed, and therefore, on breach of condition, the whole amount thereof was not forfeited, and the obligation of a bond with sureties, intead of with a deposit of collateral, though not containing such provision, being for the same purpose, is no different.

4. **Intoxicating liquors ⟝86(1)—Conditions of bond to secure compliance with permit to buy liquor for manufacturing purposes held not broken by illegal sale for beverage purposes.**

A bond running to the United States to secure compliance with the conditions of a permit to purchase liquor for manufacturing purposes, under National Prohibition Act, tit. 2, §§ 4, 6, providing that, if the principal shall comply with the requirements of the law "respecting the sale or use of distilled spirits and wines for other than beverage purposes," the obligation of the bond shall be void, was not binding on the principal and sureties for the sale of liquor for beverage purposes, though under section 4 the sale of liquor for beverage purposes under such a permit is prohibited, and under section 29 the seller renders himself liable to criminal prosecution.

⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied November 27, 1923.

In Error to the District Court of the United States for the District of North Dakota.

Action by the United States against John Wandmaker and another. Judgment for defendants, and the United States brings error. Affirmed.

Melvin A. Hildreth, U. S. Atty., of Fargo, N. D., and Eugene Grissom, of Washington, D. C. (S. L. Nuchols, Asst. U. S. Atty., of Bismark, N. D., on the brief), for the United States.

William C. Green, of Fargo, N. D. (C. C. Wattam and A. W. Fowler, both of Fargo, N. D., on the brief), for defendants in error.

Before SANBORN and LEWIS, Circuit Judges, and McGEE, District Judge.

LEWIS, Circuit Judge. This is an action against the principal and surety on a bond which the former was required to give by the National Prohibition Act, tit. 2, §§ 4 and 6 (41 Stat. 305, 309, 310), and the regulations of the Commissioner of Internal Revenue prescribing its form and amount. It appears from the complaint that Wandmaker, the principal, applied for and was granted permits pursuant to those sections and regulations, to purchase and use alcohol, in the manufacture of Wandmaker's Dandruff Remedy, Wandmaker's Quinine Tonic, Bay Rum and other compounds of alcoholic content. The complaint set up the bond in hæc verba.

"Know all men by these presents, that John Wandmaker, of Fargo, North Dakota, as principal, and United States Fidelity and Guaranty Company, a corporation of Maryland, having its principal office in the city of Baltimore, Maryland, as surety, are held and firmly bound unto the United States of America in the sum of Two Thousand and No/100 Dollars, lawful money of the United States, for the payment whereof to the United States we bind ourselves, our heirs, executors, administrators, successors or assigns, jointly and severally, firmly by these presents.

"Whereas the above bounden principal has made application for a permit to use and sell distilled spirits and wines for other than beverage purposes at No. 51 Broadway, Fargo, North Dakota, in the Collection District of North Dakota.

"Now therefore, the condition of this obligation is such that if the said principal shall fully and faithfully comply with all the requirements of the laws of the United States now or hereafter enacted and regulations issued pursuant thereto, respecting the sale or use of distilled spirits and wines for other than beverage purposes, then this obligation to be void; otherwise to remain in full force and virtue."

Sections 4 and 6 require two permits, one to purchase the alcohol and the other to use it, thus:

Sec. 4. "A person who manufactures any of the articles mentioned in this section may purchase and possess liquor for that purpose, but he shall secure permits to manufacture such articles and to purchase such liquor, give the bonds, keep the records, and make the reports specified in this act and as directed by the Commissioner. No such manufacturer shall sell, use, or dispose of any liquor otherwise than as an ingredient of the articles authorized to be manufactured therefrom. No more alcohol shall be used in the manufacture of any extract, sirup, or the articles named in paragraphs b, c, and d of this section, which may be used for beverage purposes than the quantity necessary for extraction or solution of the elements contained therein and for the preservation of the article."

Sec. 6. "Permits to purchase liquor shall specify the quantity and kind to be purchased and the purpose for which it is to be used. * * * Every permit shall be in writing, dated when issued, and signed by the Commissioner or his authorized agent. It shall give the name and address of the person to whom it is issued and shall designate and limit the acts that are permitted and the time when and place where such acts may be performed. No permit shall be issued until a verified, written application shall have been made therefor, setting forth the qualification of the applicant and the purpose for whch the liquor is to be used. The Commissioner may prescribe the form of all permits and applications and the facts to be set forth therein. Before any permit is granted the Commissioner may require a bond in such form and amount as he may prescribe to insure compliance with the terms of the permit and the provisions of this title."

[1] The regulations set out in detail the steps necessary to obtain the permits, and prescribe two forms of bond, the one with sureties, on the form given supra, and the other without sureties, to be signed only by the permittee. He had the option, as to which he would give. If the latter, he must lodge with the Director Liberty or other bonds of the United States in a face amount "equal to the penal sum of the bond;" and when the latter was given this was added to the form set out above:

"And the said principal expressly agrees that the said bonds so deposited may be sold at public or private sale, with or without notice of said sale and without notice of any character to the principal, and the proceeds applied to the payment of internal revenue taxes, interest, and penalties which may be due, and in satisfaction of any of the liabilities incurred hereunder and the expense of such sale, if any, and the residue, if any, paid to the said principal."

While the Act declares that the purpose of the bond is "to insure compliance with the terms of the permit and the provisions of this title," it also authorizes the Commissioner to fix its form and amount. The power vested in him to fix the form of bond, clearly gave him the right to determine the obligations of it and to name the condition that would constitute a breach. The regulations which he adopted prescribe a rule by which the amount named in the bond is to be ascertained, in this way:

"The basis of the penal sum of such bond shall be as follows: $4.20 per proof gallon on distilled spirits received during any quarterly period of the calendar year, plus the quantity on hand at the end of the preceding quarterly period. In no case shall the penal sum of any bond be less than $1,000.00 nor more than $100,000.00,"

and provide that the bond should secure payment of taxes, interest and penalties assessed under the internal revenue laws. See Sec. 35, Prohibition Act. We take the expression, "in satisfaction of any liabilities incurred hereunder," to be a broad inclusion of such liabilities to which the permittee might subject himself under the Prohibition Act, which authorized the issuance of the two permits. It is certainly broad enough to include them, and we see no other purpose in its use. By association it has reference to liabilities to be incurred for other penalties. We think it clear that the whole purpose of this form of bond was to secure payment of all liabilities on the part of the permittee to which he might be subjected in virtue of having received the permits.

It is alleged in the complaint that Wandmaker, in consideration of the permit and bond, was permitted to purchase, and did purchase large quantities of alcohol for non-beverage purposes, to be used in the manufacture of his preparations; and breach of the conditions of the bond is pleaded in this way:

"That subsequent to the execution and delivery of said bond and undertaking, and subsequent to the issuance of said permit, the said defendant, John Wandmaker, in violation of the conditions of said bond and undertaking, and in violation of and contrary to the terms and conditions of said permit, did, willfully, unlawfully and knowingly, sell for beverage purposes, at divers times during the year 1920, and up to and including the 17th day of March, 1921, to divers persons, alcohol, so obtained by said defendant, pursuant to said permit and undertaking, whereby the conditions of said bond and undertaking, were, by the said defendant, John Wandmaker, breached and violated."

[2, 3] It is not alleged that the permittee had incurred and had failed to pay any of the taxes, interest, penalties and liabilities above noted, nor the amounts thereof; but for the alleged breach judgment for the full sum of $2,000 is asked as a forfeiture. The complaint was held bad on demurrer, plaintiff declined to plead over, and from a judgment of dismissal the case is brought here. The question presented and argued before us is whether the sum named in the bond sued on was only intended as an indemnity for unpaid taxes, interest and penalties which might be assessed under the internal revenue laws and fines as penalties that might be imposed on prosecution under the Prohibition Act, or whether the full sum should become a forfeit absolute on breach of the condition. It is argued that the latter is the rule to be applied, that the Act, regulations, the terms of the bond and the purpose for which it was given establish that the sum named must be taken as a forfeit for the breach. This contention, it is said, is supported by U. S. v. Montell, Fed. Cas. No. 15,798; Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780; U. S. v. Dieckerhoff, 202 U. S. 302, 26 Sup. Ct. 604, 50 L. Ed. 1041; Farnsworth v. M. & P. R. Co., 92 U. S. 49, 68, 23 L. Ed. 530; U. S. v. Oteri, 67 Fed. 146, 14 C. C. A. 344; Surety Co. v. U. S., 229 Fed. 527, 143 C. C. A. 595; U. S. v. Rubin (D. C.) 227 Fed. 938 and Id. (D. C.) 233 Fed. 125; Lyman v. Perlmutter, 166 N. Y. 410, 60 N. E. 21; Paducah v. Jones, 126 Ky. 809, 104 S. W. 971; Sedgwick on Damages (9th Ed.) § 416a; Sutherland on Damages, Vol. 1 (3d Ed.) § 279 et seq. These authorities and others that are cited announce the rule, which may be said to be firmly established, that on breach of a penal bond given to the state to secure performance of a contract for the public benefit, or to do or refrain from doing an act in the public interest or in furtherance of a public policy, recovery may be had for the full amount named, no contrary purpose appearing; for damages to the obligee would in such circumstances be difficult or impossible of ascertainment and proof, and hence in such cases it is said that the parties will be held to have intended that the full sum named should be forfeited. The argument would be more persuasive if the purpose of the bond had been confined to that expressed in Sec. 6 of the Act, "to insure compliance with the terms of the permit and the provisions of this title."

But the form, with U. S. bonds deposited as collateral security, is obviously, we think, for purpose of indemnity; and under the power given to the Commissioner to prescribe the form of bond the form prescribed by him fixes its obligation and the extent to which the obligors are bound.

The Prohibition Act denounces violations of the permit as criminal offenses, subjects the permittee to criminal prosecution therefor, and the imposition of penalties in the way of fines, as liabilities which he must pay. Sec. 29 reads thus:

"Any person who manufactures or sells liquor in violation of this title shall for a first offense be fined not more than $1,000, or imprisoned not exceeding six months, and for a second or subsequent offense shall be fined not less then $200 nor more than $2,000 and be imprisoned not less than one month nor more than five years. Any person violating the provisions of any permit, or who makes any false record, report, or affidavit required by this title, or violates any of the provisions of this title, for which offense a special penalty is not prescribed, shall be fined for a first offense not more than $500; for a second offense not less than $100 nor more than $1,000, or be imprisoned not more than ninety days; for any subsequent offense he shall be fined not less than $500 and be imprisoned not less than three months nor more than two years."

The two forms of bond, either of which the permittee had the right to give, are identical in obligation. If the form requiring deposit of Liberty or other U. S. bonds had been given by Wandmaker, there can be no doubt that the ruling on the demurrer was right. The $2,000 named in the bond would not have been an agreed sum to be forfeited on breach but a penal sum to secure damages suffered in taxes, interest, penalties and other liabilities of the permittee unpaid. How, then, can the obligation in the form that was used be said to be different? We fail to find any reason for so holding. The two forms of bond were for the same purpose. We think the principle announced in the cases relied on has no application here.

[4] We have treated the alleged breach as a violation of the condition of the bond, but the obligee as without right of recovery because there is no allegation of unpaid liabilities imposed on the permittee, payment of which the bond was given to secure,—there being no insistence for nominal damages. What has been said is based on the assumption that an obligation not to sell alcohol purchased under the permit was included in the terms of the bond sued on. We now come to consider whether that is so, and in that inquiry put out of view the form of bond used when the collateral named as security for its performance is deposited with the commissioner. The Attorney General expressed a doubt whether the phrase, "for other than beverage purposes," found in the bond, did not exclude from its terms such acts as the sale here charged as a breach. He appears to have been of the opinion that it did, and advised that the phrase be eliminated. 32 Op. Atty. Gen. 365. His advice was accepted and adopted, and the form now used does not contain the quoted phrase. We are of opinion that its use raises more than a doubt. The purpose of the bond sued on was to bind Wandmaker and his surety to a compliance by Wandmaker as permittee with the law and regulations which define his rights as permittee to use alcohol in the preparation of his compounds and to

sell them. Both Act and regulations prohibit the making or selling of Wandmaker's compounds with an alcoholic content that would render them fit for or usable as a beverage. The objectionable phrase has reference to that subject. It bound Wandmaker to not do that. He had a right to make them for other than beverage purposes but in the exercise of that right the bond required that he should not make them with an excess of alcoholic content, and, if made, not to sell them. The obligation is to comply with the law and regulations "respecting the sale or use of distilled spirits and wines for other than beverage purposes." It is true that Sec. 4 of the Act prohibits a sale or disposal by the manufacturer of any liquor otherwise than as an ingredient of the articles authorized to be manufactured, and it is further true that the complaint alleges that Wandmaker sold alcohol which he had purchased under his permit. For so doing he rendered himself liable to criminal prosecution under Sec. 29. But this is an action on the bond against him and his surety. It may be that an obligation not to sell the alcohol so obtained could have been inserted and made a valid obligation of the bond, but it was not. The obligation in the bond sued on is a restricted one, and by its terms covers no duty imposed on the permittee except the one above noted. Hence, there was no breach.

Affirmed.